## STIEWEL v. BORMAN.

### Opinion delivered October 17, 1896.

PROOF OF PARTNERSHIP—ADMISSION.—The admission of one of several defendants jointly sued as partners is admissible againt himself, but not against his co-defendants, to prove the existence of the partnership relation.

SAME — REPUTATION. — Evidence that defendants were universally understood to be partners is incompetent to prove the existence of that relation between them.

LIABILITY OF AGENT TO THIRD PERSON.—The fact that an agent operates a coal mine for his principal at the time of an injury to an employee working therein, occasioned by the ignition of gas which had accumulated in the mine, does not, of itself, render him liable for damages.

SAME.—An agent having complete control and management of his principal's business, with the power to do what is reasonably necessary to protect third persons against injuries from omissions or commissions in the conduct of the same, is under obligation to so use that which he controls as not to injure another, and will be liable in damages to any third person for a failure to discharge such duty.

JUDGMENT—SERVICE OF PROCESS OUT OF COUNTY.—A judgment cannot, under Sand. & H. Dig., § 5698, be rendered against a defendant jointly sued with others who neither resided in the county in which suit was brought at the commencement of the action, nor was summoned therein, if he objected before judgment to the proceeding against him, unless judgment is recovered against a codefendant who was summoned in that county, or who resided therein at the commencement of the action.

Appeal from Pope Circuit Court.

JEREMIAH G. WALLACE, Judge.

S. R. Allen, for appellant.

1. Plaintiff was not entitled to judgment against Abe Stiewel. Sand. & H. Dig., sec. 5698. Abe Stiewel limited his appearance, and moved to quash the service, and *objected* to the proceedings before trial.

Sand. & H. Dig., sec. 5697–9. Under the issue as to
Ed. S., Joe and Harry, the question could be tried only
by a jury; and if they were not partners, such of them
as were not partners were entitled to a verdict. Joe and
Harry were not liable as principals or agents. The
verdict against Ed. S. as a partner is not sustained by
any evidence.

2. The admission of statements of Ed. S. were
incompetent to charge Abe Stiewel. 29 Ark. 512; 60
Ill. 41. General reputation or hearsay is not competent
to prove a partnership. 29 Ark. 512; 38 N. H. 99; 83
Ala. 185; 17 Am. & E. Enc. Law, 1322, and notes.

3. The fifth and seventh instructions are errone-
ous. Sand. & H. Dig., sec. 5698.

4. The assumption that an agent is liable for the
negligence of his principal, as a general rule, is wrong,
because such is not the law. An agent is not liable to
third parties for acts of negligence, nor for non-perform-
ance of duty. 62 Miss. 415; 49 Ga. 207; 117 Mass. 548;
123 id. 267; 1 Am. & Eng. Enc. Law, 406. The agent
is liable to third persons for misfeasance only. The
agent is liable only where he has full and exclusive con-
trol of the work, and the principal does not interfere,
but leaves it exclusively to the agent, in which case the
principal is not liable at all. 3 Gray (Mass.), 349; 45
Ill. 455; 63 id. 16; 34 Conn. 474.

5. The eighth instruction is correct until the last
clause is reached. By that clause the court told the
jury that Abe Stiewel is equally liable, whether his
co-defendants were his partners or his agents, which is
error.

6. Abe Stiewel could limit his appearance, and not
be bound. 8 Otto, 476; 18 Ark. 539; 39 id. 348; 16 id.
337; 5 id. 517; 13 id. 418; 35 id. 331; 86 Mo. 357; Sand.
& H. Dig. secs. 5697–9.

*A. S. McKennon*, for appellee.

1.   A change of venue having been taken by *all* the defendants, Abe appeared generally, and waived his objections.   21 S. W. 29; 32 N. W. 249.   See 3 Met. 459.

2.   Abe Stiewel, it is admitted, operated the mine, and whether Ed. S. was manager, partner, or agent, could in no way affect his liability.   On a finding that Ed. S. was liable, and that Abe was liable, judgment was properly rendered against both.   If Abe *alone* had been found liable, no judgment could have been rendered against him.

3.   The admissions of Ed. S. were surely admissible to charge him.   But, outside of these admissions, there is abundant evidence to establish the partnership as to Ed. S.

4.   An operator of a mine, whose duty it is to see that miners have a safe place to work, if liable when operating it himself, is equally liable when he entrusts the management to another as agent or superintendent, for like negligence on his part.   Their neglect to perform duties enjoined upon him by the law is to be deemed, not alone their own, but his as well, and both are liable.   McKinney on Fellow Servants, secs. 28, 32, and cases cited; 44 Am. Rep. 573; 41 *id.* 812; Wharton on Neg. 229; Beach, Contr. Neg. 110.   On the subject of negligence of master and servant combined, if that question should be deemed as involved in this case, see McKinney on Fellow Servants, sec. 16.

5.   If there is error in the instructions, the error only related to defendants, Joe and Harry I, in whose favor the jury found.

BATTLE, J.   This is an action by Fred Borman against Abe Stiewel, Joe Stiewel, Ed S. Stiewel, and

Harry I. Stiewel for damages caused by personal injuries. He stated in his complaint that defendants were partners, and as such owned and operated a coal mine at Coal Hill, in Johnson county, in this state, in the month of September, 1892, and that, by reason of their negligence in allowing gas to accumulate in their mines where plaintiff was at work in their employment the same took fire, and he was burned and injured; and asked for judgment for damages.

Ed, Joe, and Harry Stiewel, answering, denied that they were partners, or had any interest in the mining business at Coal Hill; and alleged that the mine was the property of Abe Stiewel. The other defendant, Abe Stiewel, did not answer further than file a motion to quash the summons as to himself, on the ground that he was illegally served with process in Pulaski county, the suit having been brought in Johnson county.

In the course of the trial in the action witnesses were allowed to testify, over the objection of the defendant, that the mining business at Coal Hill was in the name of Stiewel & Co.; that Ed. S. Stiewel, in speaking of it, used the word "we," and said that it belonged to him and his brothers; and that it was universally understood that Ed and Abe were partners in the same, and Harry and Joe had an interest.

Among the instructions given to the jury was the following: "If the jury believe from the evidence that the plaintiff is entitled to recover in this cause, and the jury further believe that the defendant Abe Stiewel was the owner of the mines, and that the other defendants, or some one of them, was operating the mines for him as his agent, then the defendant Abe Stiewel would be responsible with the other defendants in this case." The objection urged against this instruction applies to others which were given.

A verdict was returned in favor of the plaintiff against Abe and Ed S. Stiewel for $142, and in favor of Joe and Harry I. Stiewel; and judgment was rendered accordingly. Abe and Ed, after filing a motion for a new trial, which was overruled, appealed.

Proof of partnership by admissions or reputation.

The evidence as to the admissions of Ed S. Stiewel were admissible as to himself, but could not be considered in determining the liability of the other defendants, or the relation of either of them to themselves. The evidence as to what was universally understood was incompetent, and should not have been admitted.

Liability of agent to third person.

The instructions of the court, in effect, directed the jury, if they believed that plaintiff was entitled to recover, and that Abe Stiewel was the owner of the mines, and the other defendants, or any one of them, operated the same for him, as his agent, to return a verdict in favor of the plaintiff against him and the others who were his agents. This was error. The fact that they operated the mines as agents when appellee was injured, while working in the same, by the ignition of the gas which had accumulated therein, did not render them liable for damages. If they owed him no duty, they were not liable to him for damages. A legal duty is an essential element of negligence. Without it, there can be no negligence, and there can be no duty to do any act when there is no legal right to do it. To entitle the appellee, therefore, to recover of appellants, he must state and show that they owed him a duty, and what it was, and that they failed to perform it. Shearman & Redfield, Negligence (4th Ed.), sec. 8; Wharton, Negligence (2d Ed.), secs. 3, 82.

An agent stands in the relation of confidence and privity to no one except his principal. To him alone he is under obligations to perform those duties which he expressly or impliedly assumed when he entered into that relation, and hence to him alone is liable for their

non-performance.    Consequently, no third person is enti-
tled to recover against him for damages sustained by
reason of the non-performance or neglect of a duty
which he owed to his principal.

He, however, like other persons, in discharging his
duties to his principal, is bound to recognize and respect
the rights and privileges of others.   He must take care
that he does not by his own act unnecessarily injure
another.    If he fails to do so, either negligently or
intentionally, and thereby causes an injury to another,
he is liable for damages to the party injured.   The fact
that he was acting as agent at the time will not relieve
him of the liability.  As is said in *Delaney* v. *Rochereau*,
34 La. Ann. 1123:   "Every one, whether he is principal
or agent, is responsible directly to persons injured by
his own negligence, in fulfilling obligations resting upon
him in his individual character, and which the law
imposes upon him independent of contract.   No man
increases or diminishes his obligations to a stranger by
becoming an agent.   If, in the course of his agency, he
comes in contact with the person or property of a stran-
ger, he is liable for any injury he may do to either, by
his negligence in respect to duties imposed by law upon
him in common with all other men."

In *Osborne* v. *Morgan*, 130 Mass. 102, the plaintiff
was at work as a carpenter, putting up by the directions
of a corporation certain partitions in a room in which
the corporation was conducting the business of making
wire.    The defendants,—one the superintendent, and
the others agents and servants of the corporation,—
being employed in that business, negligently and with-
out regard to the safety of persons rightfully in the
room, placed a tackle-block and chains upon an iron nail
suspended from the ceiling of the room, and suffered
them to remain there in such a manner and so unpro-
tected from falling that by reason thereof they fell upon

and injured the plaintiff. Chief Justice Gray, for the court, said: "It is often said in the books that an agent is responsible to third persons for misfeasance only, and not for nonfeasance. And it is doubtless true that if an agent never does anything towards carrying out his contract with his principal, but wholly omits or neglects to do so, the principal is the only person who can maintain any action against him for the nonfeasance. But if the agent once actually undertakes and enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it, so as not to cause any injury to third persons which may be natural consequences of his acts; and he cannot, by abandoning its execution midway and leaving things in a dangerous condition, exempt himself from liability to any person who suffers injury by reason of his having so left them without proper safeguards. This is not nonfeasance, or doing nothing, but it is misfeasance, doing improperly. * * * In the case at bar the negligent hanging and keeping by the defendants of the block and chains in such a place and manner as to be in danger of falling upon persons underneath was a misfeasance, or improper dealing with instruments in the defendants' actual use or control, for which they are responsible to any person lawfully in the room and injured by the fall, and who is not prevented by his relation to the defendants from maintaining the action."

This distinction may also be illustrated by the language of Judge Metcalf in *Bell* v. *Josselyn*, 3 Gray, 309, where an agent had been charged with negligence in admitting water into the pipes in a building without seeing that they were in a proper condition. "Nonfeasance," said the learned judge, "is the omission of an act which a person ought to do; misfeasance is the improper doing of an act which a person might lawfully do; and malfeasance is the doing of an act which a.

person ought not to do at all. The defendant's omission to examine the state of the pipes in the house before causing the water to be let on was a nonfeasance. But if he had not caused the water to be let on, that nonfeasance would not have injured the plaintiff. If he had examined the pipes, and left them in a proper condition, and then caused the letting on of the water, there would have been neither nonfeasance nor misfeasance. As the facts are, the nonfeasance caused the act to be done a misfeasance. But from which did the plaintiff suffer? Clearly from the act done, which was no less a misfeasance by reason of its being preceded by a nonfeasance."

An agent of the owner of real estate, who has the complete control and management of the property, and has undertaken to keep it in repair, is liable to third persons for injuries to the latter while using the premises in an ordinary and appropriate manner, which were caused by the failure of the agent to make necessary repairs. Thus, in *Baird* v. *Shipman*, 132 Ill. 16, Aaron C. Goodman was the owner of a barn in Chicago. Appellants were his agents for renting the same during the year 1884 and 1885, and during both years were carrying on the real estate business in Chicago. In those years Goodman was absent, and a resident of Hartford, in Connecticut. "On the trial, evidence was given tending to show that they had in fact complete control of the premises, with the residence and farm to which it belonged, and there was no proof that they received any directions from the owner. The property was rented by appellants to Emma R. Wheeler and A. R. Tilman from April 1, 1884, to April 30, 1885, and to Emma R. Wheeler from May 1, 1885, to April 30, 1886. Both leases were in writing, and by the terms of each lease the tenants covenanted to keep the premises in good repair. The tenant in the last lease rented the premises to Nellie E.

Pierce, who occupied the same from April 28 to September, 1885. The evidence tended to prove that when the lease was made.to Emma R. Wheeler the large carriage door to the barn was in a very insecure condition, and that appellants, through one, the manager of their renting department, verbally agreed with Mrs. Wheeler to put the premises in thorough repair. Nothing was done to improve the condition of the door, and on June 12, 1885, while the deceased, an expressman by occupation, was employed in delivering a load of kindling in the barn for one of the parties living in the house, the door, weighing about 400 pounds, fell from its fastenings, and injured him to such an extent that he died next day." And the court held that appellants were liable for the damages occasioned by the injury. *Campbell* v. *Portland Sugar Co.* 62 Me. 552.

So an agent having the whole charge of the erection of a building, and exercising full control over it, is liable for an injury to a third person, resulting from the failure to use the reasonable precautions which were probably necessary for his protection against the same. For example, in *Ellis* v. *McNaughton*, 76 Mich. 237, "it was decided that an agent who has entire control of premises and of the erection of a building for his principal is liable for injuries resulting to third persons from the removal of a walk on the premises, contrary to his orders, if, after such removal, he knew of the dangerous condition of the premises, and allowed them to remain in that condition." *Mayer* v. *Thompson-Hutchison Building Co.* (Ala.), 16 So. Reporter, 620; *Slater* v. *Chapman*, 67 Mich. 523; *Bickford* v. *Richards*, 154 Mass. 163; *Nowell* v. *Wright*, 3 Allen, 166; *Brown Paper Co.* v. *Dean*, 123 Mass. 267.

The same rule applies to agents having full and complete control and management of any business, enterprise, or undertaking, and the power and authority to

do whatever, in the exercise of ordinary prudence, he finds reasonably necessary to prevent injuries to others. As to whether the failure to use such precaution be misfeasance, there is a conflict of opinion. But the question is of no practical importance. The liability of the agent rests upon his failure to discharge a duty, as in mis-feasance. Having complete control and management of the business, with the power and authority to do what is reasonably necessary to protect third persons against injuries resulting from omissions or commissions in the conduct of the same, he stands in the relation to others which his principal occupies. He is under obligation to so use that which he controls as not to injure another. For a failure to discharge this duty, he is liable in damages to the party injured. This is a reasonable rule. As said in *Mayer* v. *Thompson-Hutchison Building Co.*, *supra*, there is no "sound reason why a person who, acting as principal, would be individually liable to third persons for an omission of duty, becomes exempt from liability for the same omissions of duty because he was acting as servant or agent."

The above rule is applicable to this case. Tested by it, the instructions given to the jury by the court are erroneous, and were prejudicial to appellants.

As to the sufficiency of the service of the summons upon Abe Stiewel in Pulaski county for a basis of judgment against him, section 5698 of Sandels & Hill's Digest is decisive. That section is as follows: "Where any action embraced in section 5696 is against several defendants, the plaintiff shall not be entitled to judgment against any of them on the service of a summons in any other county than that in which the action is brought, where no one of the defendants is summoned in that county or resided therein at the commencement of the action, or where, if any of them resided, or were summoned in that county, the action is discontinued or

*Service of process out of county.*

dismissed as to them, or judgment therein is rendered in their favor, unless the defendant summoned in another county, having appeared in the action, failed to object before judgment to its proceeding against him."

According to this statute, appellee is not entitled to judgment in this action against Abe Stiewel, although he may be entitled to recover against him, unless judgment is recovered against one of the defendants who resided in the county in which the action was brought at its commencement, or was summoned in such county, or he fails to object before judgment to its proceeding against him.

As to the proper mode of pleading matters of abatement, appellant's attention is directed to *Grider* v. *Apperson*, 32 Ark. 332; *Union Guaranty, etc., Co.* v. *Craddock*, 59 Ark. 593.

The judgment against appellants is reversed, and the cause is remanded for a new trial as to them.

---

NOTE—As to liability of an agent or servant to third persons for negligence, see note to *Mayer* v. *Thompson-Hutchison Building Co.* (Ala.), 28 L. R. A. 435. (Rep.)

