Frank Lee FRANKLIN *v.* STATE of Arkansas

CR 91-245                                   825 S.W.2d 263

Supreme Court of Arkansas
Opinion delivered March 9, 1992

*John L. Kearney*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Frank Lee Franklin, was convicted of rape and sentenced, as an habitual offender, to 300 years in the Arkansas Department of Corrections. On appeal, he argues the evidence was insufficient to support the conviction and that the sentence imposed was excessive, given the evidence in the case. We disagree with both contentions and affirm.

Evidence at trial revealed that at approximately 1:30 a.m. on March 2, 1990, the victim was working alone at a Junior Food Mart in Pine Bluff. A black male entered the store, approached the victim as she was mopping the floor, and forced her into the back storage room at gunpoint. The victim testified the assailant forced her to remove her shirt and to pull down her pants and underwear. He repeatedly threatened to kill her. While on her hands and knees, the victim was raped and sodomized. As the man was pulling his pants on, he allowed her to get up from the floor at which point she turned and "got a good look at him then, just like I did when he came in that store." She stated he looked her in the face with the gun pointed at her, closed the door to the storage room, and exited the store, grabbing some cigarettes on his way out. The victim saw the man leave on the video camera monitor located in the back of the store. The video camera swept the store and filmed various locations at brief intervals. Some of the events described by the victim were taped and verified her account of the attack.

In statements to the investigating police officers who responded to her call for help, the victim described her assailant as being approximately 5 feet, seven inches tall, about 140 pounds, and wearing a dark trench coat and a baseball cap. Clothing matching this description was later recovered from Franklin's home pursuant to a search warrant.

In addition to the victim's positive identification of Franklin at trial, she had previously identified Franklin both in a photographic lineup and in a personal lineup. Detective Phyllis Silas testified that on the day the rape occurred, March 2, the victim was shown six mug shot photo albums, each containing approximately 100 photographs. When she was unable to make an identification from these albums, an identity kit composite was done. From the composite, another man became a suspect in the case, whose photograph was included in a six-person photo spread and shown to the victim on March 6; however, this suspect was not identified as the assailant. The following day, the victim was shown a photo line-up which included Franklin's photograph and, according to Detective Silas, she identified him as the attacker "without hesitation." She also later identified Franklin at the police station in a physical line-up.

A medical examination of the victim shortly following the attack corroborated her story of intercourse, and serological tests conducted at the state crime laboratory showed that semen samples taken from the victim contained blood type "B", the same blood type as Franklin's.

Franklin points to various inconsistencies in the victim's statements to the police and her testimony at trial to support his argument that the trial court should have sustained his motions for directed verdict. The complained-of discrepancies include her description of when the assailant actually pulled the gun on her, a change in her physical description of the man from "five feet eight and heavy set" to "five feet seven and about 140 pounds," uncertainty about the color of the attacker's cap, and certain details about the attack itself.

In determining whether there is sufficient evidence to support a jury verdict, this court views evidence in the light most favorable to the appellee and affirms the verdict if there is substantial evidence to support it. Substantial evidence is that which is of sufficient force to compel a conclusion one way or another and must be more than mere speculation or conjecture. *Crutchfield* v. *State*, 306 Ark. 97, 812 S.W.2d 459 (1991). It is the jury's job to resolve any contradictions, conflicts and inconsistencies in a witness's testimony and, in doing so, the jurors may believe the parts of her testimony they believe to be true and

disregard those they believe to be false. *Abdullah* v. *State*, 301 Ark. 235, 783 S.W.2d 58 (1990). Furthermore, we have held that, in rape cases, the requirement of substantial evidence is satisfied by the rape victim's testimony. *Wilson* v. *State*, 307 Ark. 21, 817 S.W.2d 203 (1991).

The victim's account of the rape was verified, in large part, by the video tape, medical evidence, and her statements to the police, and the jury was free to resolve any conflicts in the evidence as they wished. Most significantly, after reviewing hundreds of photographs, the victim immediately identified Franklin as her attacker and was unwavering in that identification, during both the photo spread and the physical lineup.

■ The trial court did not err in refusing to direct a verdict for Franklin, and the jury had sufficient evidence before it to sustain a verdict of guilty, without resort to speculation or conjecture.

■ We also reject Franklin's contention that the 300 year sentence was excessive. The jury was advised, without objection, that Franklin had six prior felony convictions, three of which were sexual offenses. The trial court properly instructed the jury, under Ark. Code Ann. § 5-4-501(b)(1) (1987), that a person convicted of rape, who has four or more previous felony convictions, may be sentenced to a term of "not less than forty years nor more than life." We held in *Malone* v. *State*, 294 Ark. 127, 741 S.W.2d 246 (1987), that a sentence of 300 years did not exceed life imprisonment since the only sentences greater than life, under our statutes, would be life without parole and death. There is nothing in the United States Constitution or under Arkansas law that prohibits a sentence of years that exceeds the usual life span of human beings. *Id.* Thus, Franklin's sentence was not excessive because it was within the statutory limits. *Ricketts* v. *State*, 292 Ark. 256, 729 S.W.2d 400 (1987).

Affirmed.